STATE OF NORTH CAROLINA v. ALVIN TERRILL FOSTER, JR.

No. COA03-348

(Filed 17 February 2004)

**1. Drugs— trafficking in cocaine by possession—possession with intent to manufacture, sell, or deliver cocaine—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charges of trafficking in cocaine by possession and possession with intent to manufacture, sell, or deliver cocaine, because: (1) knowledge of the weight of the cocaine was not an element of the trafficking charge, and as long as the amount found in defendant's possession is equal to or greater than 28 grams, a conviction for trafficking may be obtained; and (2) there was evidence from which a reasonable mind could conclude that defendant was purchasing the cocaine as a dealer with the intent to manufacture, sell, or deliver.

**2. Criminal Law— entrapment—failure to instruct plain error**

The trial court committed plain error in a trafficking in cocaine by possession and possession with intent to manufacture, sell, or deliver cocaine case by failing to instruct the jury on the defense of entrapment, because: (1) based on defendant's version of the controlled sale by the police, it was possible that defendant was tricked by law enforcement into buying a larger

amount of cocaine than he intended; and (2) there was a reasonable possibility that given an entrapment instruction the jury, considering defendant's previous "user" purchase, the determination of the police to target someone for at least an ounce of cocaine, the immediate arrest following defendant's acceptance of the squeezed-up package, and the fact that the informant was never called to testify, would have come out in defendant's favor and only found him guilty of the lesser-included offense of simple possession.

Appeal by defendant from judgment dated 7 August 2002 by Judge Charles H. Henry in Onslow County Superior Court. Heard in the Court of Appeals 3 December 2003.

*Attorney General Roy Cooper, by Assistant Attorney General J. Bruce McKinney, for the State.*

*The Kelly Law Firm, by George E. Kelly, III, for defendant-appellant.*

BRYANT, Judge.

Alvin Terrill Foster, Jr. (defendant) appeals a judgment dated 7 August 2002 entered consistent with a jury verdict finding him guilty of trafficking in cocaine by possession and of possession with intent to manufacture, sell or deliver cocaine.

On 14 May 2002, defendant was indicted for "traffic[king] by possessing 28 grams or more but less than 200 grams of cocaine" and "possess[ing] cocaine, with the intent to manufacture, sell and deliver a controlled substance." At trial, Michael Washington, a law enforcement officer with the narcotics unit of the Onslow County Sheriff's Department, testified that, on 31 October 2001, he had begun working on an arrangement with a drug dealer (the informant), who had just been taken into custody, to identify potential purchasers for one ounce (approximately 28.3 grams) of cocaine as targets in an undercover operation. While the informant was at the police station talking to Officer Washington, the informant received a call on his cellular telephone from defendant seeking to purchase some cocaine. The informant and defendant talked on the cellular telephone two or three more times that day, setting up the deal. Officer Washington testified he did not hear the terms of the arranged deal but was told by the informant that defendant had agreed to buy one ounce of powder cocaine for $800.00, with $500.00 to be paid upon delivery of the

cocaine and $300.00 at a later time. A meeting for the payment of the second installment was not arranged.

Officer Washington testified that the street value of one ounce of cocaine, sold a gram at a time, could be $2,800.00 or more. The price, however, depends on whether the purchaser is a user or a dealer. A user would likely pay $100.00 per gram whereas "[a] dealer w[ould] not pay that." In this case, "the subject agreed to $800[.00]," which to Officer Washington indicated a "seller amount" as opposed to a "user amount."

Around 6:00 p.m. on 31 October 2001, Officer Washington drove the informant to a prearranged location to meet defendant. Upon arrival, the informant spotted defendant standing in a parking lot. The informant exited the vehicle and walked over to defendant, talking to him for a few minutes outside of Officer Washington's earshot. The two men then returned to the vehicle. The informant sat down in the front passenger seat, and defendant got into the back seat. After the informant told Officer Washington defendant wanted to see the cocaine, Officer Washington handed defendant a plastic bag of cocaine along with a digital scale. Officer Washington testified he showed defendant how to turn on the scale and then watched defendant weigh the cocaine. In response to the officer's question if "that [was] good," defendant answered "yeah" and handed the cocaine and scale back to Officer Washington. Defendant subsequently exited the vehicle to get the purchase money. Five minutes later, defendant returned to the vehicle, handed Officer Washington $500.00, and received the cocaine in exchange. As defendant stepped out of the vehicle, Officer Washington gave the "take-down signal," and defendant was arrested. When defendant was searched incident to arrest, the plastic bag, later determined to contain 32.2 grams of cocaine hydrochloride (also known as powder cocaine), was found in his pocket. The informant did not testify at trial.

Defendant testified that he knew the informant as a drug dealer and admitted to having bought 5 grams of cocaine for $500.00 when the informant approached him at a football game about a month prior to the events on 31 October 2001. On 31 October 2001, the informant again contacted defendant, this time by telephone, offering to sell him drugs. Defendant agreed to another purchase of 5 grams of cocaine for $500.00 from the informant to help relieve the stress he was experiencing due to marital problems. The two men talked a few more times on the telephone that day to arrange the time and location for the transaction. After the informant's arrival at the prearranged loca-

tion that evening, the informant got out of a vehicle driven by Officer Washington and walked over to defendant, talking to him for a moment. Defendant testified that the informant "knew what I wanted": 5 grams of cocaine, the same as the previous purchase. The two men then got into the vehicle, with the informant taking the front passenger seat and defendant sitting down in the back. Officer Washington handed defendant a plastic bag of cocaine together with a scale, which defendant set on the back seat. Defendant looked at the items for only "two or three seconds" before handing them back to Officer Washington. Defendant did not weigh the bag and testified that when he exited the vehicle to get the $500.00 purchase money, they were supposed to cut the 5 gram portion for him. After his return with the money, defendant did not have a chance to observe the size of the bag handed to him because it was "squeezed up" and he was arrested the moment he held the bag in his hand. Defendant further testified that he was just a user who had only started because of marital problems and never intended to buy an ounce of cocaine. When defendant told Officer Washington in the vehicle that "it was good," defendant only meant that "it looked like the same stuff [he] had [bought] before." The comment was not directed toward the weight of the cocaine.

At the close of the State's evidence and at the close of all the evidence, defendant moved to dismiss the charges against him. The trial court denied the motions. During the charge conference, defendant argued for the trial court to include, based on the evidence presented at trial, a jury instruction on trafficking that defendant's possession of *more than 28 grams of cocaine* had to be knowing. The trial court was sympathetic to defendant's argument and allowed both sides time to find case law on the issue. When no relevant case law was found, the trial court, in interpreting N.C. Gen. Stat. § 90-95(h)(3), ruled that the knowledge requirement referred only to the controlled substance and not its quantity. Defendant's objection to the verdict sheet was noted for the record. As to the charge of trafficking in cocaine, the trial court instructed the jury that for a guilty verdict it had to find beyond a reasonable doubt that "defendant knowingly possessed cocaine" and "that the amount of cocaine which . . . defendant possessed was 28 or more grams." After deliberations had begun, the trial court received a note from the jury requesting permission to examine the scale and the bag containing the controlled substance. The trial court denied the request and instructed the jury to continue its deliberations.

STATE v. FOSTER

[162 N.C. App. 665 (2004)]

The issues are whether the trial court: (I) erred in denying defendant's motion to dismiss the charges and (II) committed plain error in failing to instruct the jury on entrapment.

I

**[1]** Defendant first contends because he did not know that the bag of cocaine he bought contained more than 5 grams of cocaine, and a weight of 28 grams or more is (1) an element of trafficking in cocaine and (2) acceptable evidence from which intent to manufacture, sell or deliver can be inferred, his motions to dismiss the trafficking and possession with intent to manufacture, sell or deliver charges should have been granted. *See* N.C.G.S. § 90-95(h)(3) (2003) ("[a]ny person who . . . possesses 28 grams or more of cocaine . . . shall be guilty of . . . 'trafficking in cocaine' "); *State v. Morgan*, 329 N.C. 654, 660, 406 S.E.2d 833, 836 (1991) (holding the full ounce of cocaine the defendant conspired to possess " 'was more than an individual would possess for his personal consumption' " and the "quantity alone, therefore, was sufficient evidence to support the inference that [the] defendant intended to deliver or sell the cocaine") (citation omitted). We disagree.

In reviewing a motion to dismiss, the court determines whether (1) there is substantial evidence of each essential element of the offense charged and (2) the defendant was the perpetrator of the offense. *State v. Mooneyhan*, 104 N.C. App. 477, 481, 409 S.E.2d 700, 703 (1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Defendant's argument with respect to the trafficking charge rests on the proposition that knowledge of the weight of the cocaine was an element of the offense under N.C. Gen. Stat. § 90-95(h)(3). Defendant was unable to find any authority on this point, but since the filing of the briefs in this case, the Court of Appeals has unequivocally rejected this argument in *State v. Shelman*, —— N.C. App. ——, ——, 584 S.E.2d 88, 93, *disc. review denied*, 357 N.C. 581, 589 S.E.2d 363 (2003). This Court held "that to convict an individual of drug trafficking the State is *not* required to prove that [the] defendant had knowledge of the weight or amount of [the drug] which he knowingly possessed . . . . Instead, the statute requires only that the defendant knowingly possess . . . the controlled substance[]." *Id.* (emphasis in original). Thus, as long as the amount found in the defendant's possession is equal to or greater than 28 grams, a conviction for traffick-

ing may be obtained. *Id.* Consequently, defendant's contention as to the trafficking charge is without merit.[1]

Defendant further argues his lack of knowledge as to the weight of the cocaine warrants dismissal of the possession with intent to manufacture, sell or deliver charge because he lacked the requisite intent as a dealer. In ruling on a motion to dismiss, however, the evidence must be considered in the light most favorable to the State, giving it the benefit of every reasonable inference. *Mooneyhan*, 104 N.C. App. at 481, 409 S.E.2d at 703. Furthermore, "inconsistencies or contradictions[, as presented by defendant's testimony,] are disregarded" because "[t]he credibility of the witnesses and the weight to be given their testimony is exclusively a matter for the jury." *Id.* Therefore, so long as the State presented substantial evidence of intent, the motion to dismiss was properly denied.

In this case, Officer Washington testified that the informant had arranged with defendant for the purchase of one ounce of cocaine for $800.00, $500.00 of which was to be paid at the time of the transaction and $300.00 sometime thereafter. Officer Washington explained $800.00 was the price a dealer would pay for this amount whereas a user would pay around $100.00 per gram. There was thus evidence from which a reasonable mind could conclude that defendant was purchasing the cocaine as a dealer with the intent to manufacture, sell or deliver. *Id.*; *see Morgan*, 329 N.C. at 660, 406 S.E.2d at 836. Accordingly, the trial court did not err in failing to dismiss the charge.

II

[2] Defendant next contends the evidence presented at trial warranted an instruction to the jury on the defense of entrapment.

Entrapment is defined as " 'the inducement of one to commit a crime not contemplated by him, for the mere purpose of instituting a criminal prosecution against him.' " *State v. Stanley*, 288 N.C. 19, 27, 215 S.E.2d 589, 594 (1975) (citation omitted). To establish entrapment, a defendant must show (1) "acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime," and (2) a "criminal design [that] originated in the minds of the government officials, rather

---

1. Based on this Court's holding in *Shelman*, we also overrule defendant's assignment of error that the trial court erred in failing to instruct the jury that it had to find defendant "to knowingly possess 28 grams or more of cocaine" to find him guilty of trafficking in cocaine.

than with the innocent defendant, such that the crime is the product of the creative activity of the law enforcement authorities." *State v. Walker*, 295 N.C. 510, 513, 246 S.E.2d 748, 750 (1978). Thus, " '[t]he defense is not available to a defendant who was predisposed to commit the crime charged absent the inducement of law enforcement officials.' " *State v. Thompson*, 141 N.C. App. 698, 706, 543 S.E.2d 160, 165 (2001) (citation omitted). Although in order to raise the defense of entrapment "[a] defendant also must admit to having committed the acts underlying the offense with which he is charged in order to receive an entrapment instruction[,] . . . an entrapment defense may be employed by a defendant who denies having the *intent* required for the commission of a crime." *State v. Sanders*, 95 N.C. App. 56, 61, 381 S.E.2d 827, 830 (1989) (emphasis in original). The defendant carries the burden of proving entrapment to the satisfaction of the jury, *Thompson*, 141 N.C. App. at 706, 543 S.E.2d at 165, and "is entitled to a jury instruction on entrapment whenever the defense is supported by [the] defendant's evidence, viewed in the light most favorable to the defendant," *State v. Jamerson*, 64 N.C. App. 301, 303, 307 S.E.2d 436, 437 (1983). Because defendant failed to request an instruction on entrapment in this case, he is subject to plain error analysis on appeal and must therefore further establish that, but for the error, the jury would likely have reached a different conclusion. *See State v. Odom*, 307 N.C. 655, 660-61, 300 S.E.2d 375, 378-79 (1983) ("[i]n deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt").

In the case *sub judice*, defendant argues he was entrapped into committing the offenses of trafficking in cocaine and possession with intent to manufacture, sell or deliver cocaine, as opposed to the offense of simple possession he intended to commit, and as a result was subjected to an enhanced criminal penalty. Entrapment affecting the severity of the punishment imposed for a criminal act has been recognized by other states and in federal court. *See United States v. Si*, 343 F.3d 1116, 1128 (9th Cir. 2003) ("[s]entencing entrapment occurs when a defendant is predisposed to commit a lesser crime, but is entrapped into committing a more significant crime that is subject to more severe punishment because of government conduct"); *Leech v. State*, 66 P.3d 987, 990 (Okla. 2003) (holding that "[a] defendant who intended to possess small amounts of an illegal drug could be entrapped by officers into possessing a trafficking quantity or even a

quantity sufficient to support a charge of intent to distribute"). Recognition of sentencing entrapment as a form of entrapment under North Carolina law is consistent with the definition of entrapment adopted in this State. *See* 2 N.C.P.I.—Crim. 309.10 (2001) (elements of the defense in this case require that "the criminal intent to commit [trafficking in cocaine and possession with intent to manufacture, sell or deliver cocaine] did not originate in the mind of the defendant" and "persuasion or trickery [was used] to cause the defendant to commit [*these*] crime[s] which he was not otherwise willing to do").

Defendant did not deny having committed the essential elements of trafficking in cocaine and only asserts that he lacked the requisite intent to commit either of the charges against him. The evidence presented by defendant at trial, viewed in the light most favorable to him, indicates that defendant was merely a user, not a dealer, and that the 31 October 2001 purchase was only the second time in defendant's adult life that he had procured drugs.[2] In addition, defendant testified the amount previously purchased was restricted to 5 grams for $500.00. As this testimony, which went unchallenged by the State, served to show that defendant was not predisposed to trafficking in cocaine or possession with intent to manufacture, sell or deliver cocaine, he was not foreclosed from receiving an entrapment instruction if the evidence further established "acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce [him] to commit [the] crime[s]." *Walker*, 295 N.C. at 513, 246 S.E.2d at 750.

As to this element of the defense, the State's evidence showed that the police had already decided to target someone for a one-ounce buy before the telephone contact between the informant and defendant occurred. According to defendant, it was the informant who telephoned him and suggested a drug purchase. Defendant agreed to 5 grams for $500.00, the user rate for this amount of cocaine, just as he had done the month before, but the bag of cocaine ultimately delivered to him contained more than an ounce of cocaine. Although the bag handed to defendant in the vehicle appeared bigger than his previous purchase from the informant, defendant testified that Officer Washington and the informant were supposed to cut his share of the cocaine while he stepped outside to get the purchase money. When defendant returned, the deal was consummated so quickly that he did not have time to observe the "squeezed[-]up" plastic bag

_____

2. Defendant has no criminal record except for a conviction of simple possession of marijuana when he was fourteen years old.

Officer Washington handed him. Based on defendant's version of the controlled sale by the police, it is thus possible that defendant was tricked by law enforcement into buying a larger amount of cocaine than he had intended, entitling him to an instruction on the defense of entrapment.

We now consider whether, in light of defendant's failure to request such an instruction, he is entitled to a new trial under a plain error analysis. As held in *Shelman*, knowledge of the weight of a controlled substance is not an essential element of trafficking in cocaine. *Shelman*, 159 N.C. App. at 306, 584 S.E.2d at 93. Since the trial court instructed the jury accordingly, the jury could not consider defendant's belief about the amount of cocaine purchased in reaching its verdict on the trafficking charge. In addition, the large amount of cocaine found on defendant was sufficient by itself for the jury to find that defendant had the requisite intent for the offense of possession with intent to manufacture, sell or deliver. *See Morgan*, 329 N.C. at 660, 406 S.E.2d at 836. Finally, it seems that defendant's testimony had an impact on both the judge and the jury. During the charge conference, the judge appeared sympathetic to defendant's version of the events and allowed defendant extended time to research legal authority on whether intent as to the weight of a controlled substance constitutes an element of trafficking. The jury in turn requested the trial court's permission to see the bag of cocaine and the scale during deliberations despite uncontradicted evidence from the State that the cocaine found on defendant weighed 32.2 grams. This request indicates that the weight and appearance of the bag remained an issue for the jury. As such, there is a reasonable possibility that given an entrapment instruction the jury, considering defendant's previous "user" purchase, the determination of the police to target someone for at least an ounce of cocaine, the immediate arrest following defendant's acceptance of the "squeezed[-]up" package, and the fact that the informant was never called to testify, would have come out in defendant's favor and only found him guilty of the lesser-included offense of simple possession. *See Leech*, 66 P.3d at 991 (Johnson, P.J., concurring) (observing that "[t]he justice system should look with a jaundiced eye upon reverse sting operations"). We thus reverse and remand this case for a new trial in accordance with this opinion.

New trial.

Judges CALABRIA and ELMORE concur.